United States District Court
For the Northern District of California

```
                    IN THE UNITED STATES DISTRICT COURT

                   FOR THE NORTHERN DISTRICT OF CALIFORNIA


JOHN P. O'NEIL,                           No. C 04-03318 CW

          Plaintiff,                      ORDER DENYING
                                          PLAINTIFF'S
     v.                                   MOTION FOR
                                          JUDGMENT UNDER
FIREMAN'S FUND AMERICAN RETIREMENT        RULE 52 AND
PLAN; FIREMAN'S FUND LONG-TERM            GRANTING
DISABILITY PLAN; EMPLOYEE BENEFIT         DEFENDANTS'
ADMINISTRATION COMMITTEE; AND AETNA       CROSS-MOTION FOR
LIFE INSURANCE COMPANY,                   JUDGMENT.

          Defendants.
                                      /
```

Plaintiff John O'Neil filed this lawsuit against Fireman's Fund American Retirement Plan, Fireman's Fund Long-term Disability Plan, the Employee Benefit Administration Committee, and Aetna Life Insurance Company (collectively, Defendants), alleging that Defendants violated his rights pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA) by denying his claim for retirement and long-term

disability benefits.[1]  Plaintiff now moves, pursuant to Federal Rule of Civil Procedure 52, for judgment by the Court. Defendants oppose the motion, and cross-move for judgment in their favor.

Having considered the parties' papers and the evidence cited therein, the Court DENIES Plaintiff's motion for judgment under Rule 52, and GRANTS Defendants' cross-motion for judgment.

BACKGROUND

Plaintiff worked as a systems analyst for Fireman's Fund Insurance Company (FFIC) from October 6, 1975 through June 20, 1980, and again from February 24, 1982 through January 27, 1984. Soares Decl., Ex. C, FFIC 0015.

As a full-time employee of FFIC, Plaintiff was covered by FFIC's retirement and short-term and long-term disability plans, which were administered by the Employee Benefit Administration Committee (EBAC).  The long-term disability plan (LTD Plan) paid benefits to employees who had been "totally disabled" for at least six months, and required that this six month period commence while the employee was a participant in the Plan. Soares Decl., Ex. C, LTD, FFIC 0160-62.  The LTD Plan defined "totally disabled" as "unable to work because of disease or injury" and under the care of a physician.  LTD, FFIC 0159-60.

Since at least May, 1983, Plaintiff has experienced

---

[1] All claims against Defendant Aetna Life Insurance Company were dismissed.  See January 24, 2005 Stipulation and Order for Voluntary Dismissal of Defendant Aetna Life Insurance Company.

2

symptoms of depression, including anxiety, fatigue and difficulty concentrating. Soares Decl., Ex A, Chronology, FFIC 0007. On October 11, 1983, FFIC's Associate Medical Director informed Plaintiff's treating physician at Kaiser, Dr. Mizroch, that Plaintiff was performing poorly at work due to his depression, and Dr. Mizroch responded in a letter that Plaintiff suffered from "chronic fatigue and depression." Chronology, FFIC 0007. On October 12, Plaintiff was placed on short-term disability leave. Baum Decl., Ex. A, Staff Summary, FFIC 0004. However, on November 30, Dr. Mizroch noted that Plaintiff felt "100% better" and cleared him to return work on December 5 without restrictions. Soares Decl., Ex. C, Kaiser Treatment Verification, FFIC 0036; Chronology, FFIC 0008.

The parties dispute whether Plaintiff actually returned to work on December 5, and under what conditions. Plaintiff's only competent evidence on this point is a March, 2002 declaration, in which he stated generally, "About the end of 1983 or early 1984 when I was out on disability for depression, I received a letter from Fireman's Fund saying that my job had been eliminated." Soares Decl., Ex. C, FFIC 0107.[2] However, Plaintiff's declaration does not specifically state whether he returned to work on December 5, 1983. EBAC understood

---

[2] Somewhat in tension with Plaintiff's March, 2002 declaration, in a July, 2001 letter to FFIC, Plaintiff's counsel stated that Plaintiff had returned to work on December 5 merely on a "trial" basis. Soares Decl., Ex. C, FFIC 0025. However, this assertion is not competent evidence, and is contradicted by Dr. Mizroch's report clearing Plaintiff to return to work without restrictions.

3

Plaintiff's declaration to mean that he went on a second disability leave in late 1983 or early 1984, which is not supported by other evidence in the administrative record. Soares Decl., Ex. B, Appeal Denial, FFIC 0563.  The administrative record contains no medical report placing Plaintiff on a second disability leave, as it did for his leave beginning October 12.  Furthermore, Plaintiff's FICA wage records show that he received payments from Aetna in 1983, presumably, according to EBAC's staff, for short-term disability leave, but not in 1984.  Staff Summary, FFIC 0005; FICA, FFIC 0041.

According to FFIC staff, on January 27, 1984, Plaintiff left FFIC's employment.  Soares Decl., Ex. C, FFIC 0015.  As noted above, Plaintiff stated in his March, 2002 declaration that his job was eliminated.  Soares Decl., Ex. C, FFIC 0107.

On January 27, 1984, the same day Plaintiff left FFIC, Dr. Mizroch examined him and reported that he was "generally doing well," although he had experienced "2 recent brief (1-2") 'anxiety attacks,'" and that he had a new job offer in sales. Soares Decl., Ex. C, Kaiser Progress Report, FFIC 0038. Plaintiff was next examined five months later, on May 10, 1984, when Dr. Mizroch noted that he was working as an insurance salesman, but was "not feeling well – having same symptoms." Kaiser Progress Report, FFIC 0039.  Plaintiff denies that he was working as an insurance salesman, pointing to FICA wage records for 1984.  However, the FICA wage records show only that Plaintiff earned a total of $4,424 in 1984, not where Plaintiff

4

was employed. FICA, FFIC 40. FICA wage records show that from 1985 through 1995, when Plaintiff turned sixty-five, his earnings never exceeded $2,400 annually. FICA, FFIC 40.

On September 25, 1985, Social Security Administration (SSA) medical personnel conducted a psychiatric evaluation of Plaintiff. Baum Decl., Ex. A, Medical Summary, FFIC 0076-0083. On September 26, 1985, the SSA awarded Plaintiff disability benefits. The SSA disability determination reported that Plaintiff's diagnosis was "psychotic depression," and that his condition had begun on May 15, 1983. Baum Decl., Ex. A, Disability Determination, FFIC 0037.

On May 7, 2001, Plaintiff filed a claim for retirement and long-term disability benefits with FFIC, claiming benefits from 1984 onward. Soares Decl., Ex. C, FFIC 0018. On January 2, 2002, Plaintiff completed his claim submissions to EBAC. Soares Decl., Ex. C, FFIC 0051-59. On February 8, 2002, EBAC denied Plaintiff's disability claim on the following grounds: (1) the claim was too late; (2) Plaintiff was not "totally disabled" at the time his employment ended, as required by the LTD Plan; (3) Plaintiff did not complete the then-applicable six-month elimination period; and (4) Plaintiff was not "under the care of a physician" throughout his period of total disability, as required by the LTD Plan. Soares Decl., Ex. A, Denial, FFIC 0094-97. EBAC also denied Plaintiff's retirement claim, because the sole basis for awarding such benefits was his claimed entitlement to long-term disability benefits through retirement age. Denial, FFIC 0096.

On March 11, 2002, Plaintiff timely appealed the denial of his claim, and submitted the declaration quoted above, in which he stated that he was terminated while on disability leave in late 1983 or early 1984. Soares Decl., Ex. C, FFIC 0106-07. On April 3, 2002, EBAC invited Plaintiff to submit additional information to support his appeal. Soares Decl., Ex. C, FFIC 0109-0111. Plaintiff declined EBAC's invitation. Soares Decl., Ex. C, FFIC 0112. On June 28, 2002, EBAC affirmed its denial of Plaintiff's claim. Appeal Denial, FFIC 0563-64.

On August 5, 2002, Plaintiff and his wife filed suit against FFIC (Case No. C 02-3766 CW). After the Court dismissed plaintiffs' ERISA claims with leave to amend, they voluntarily dismissed the suit.

On June 21, 2004, Plaintiff requested that EBAC reconsider its denial of his claims, and submitted two recent medical evaluations. Baum Decl., Ex. A, FFIC 541-550. EBAC declined to reconsider Plaintiff's claim, because he had exhausted his administrative remedies. Baum Decl., Ex. A, FFIC 0551.

On August 13, 2004, Plaintiff filed this action. Plaintiff seeks (1) disability benefits from January, 1984 through May, 1995, when Plaintiff turned sixty-five, under ERISA section 502(a)(1)(B); (2) an equitable order under ERISA section 502(a)(3)(B), which authorizes a suit for other appropriate equitable relief, requiring Defendants to pay any benefits owed; and (3) a declaration under section 502(a)(3)(B) of Plaintiff's entitlement as a disability plan beneficiary to rights under the Retirement Plan.

6

LEGAL STANDARD

ERISA provides Plaintiff with a federal cause of action to recover the benefits he claims are due under the Plan. 29 U.S.C. § 1132(a)(1)(B). To evaluate Plaintiff's claim, the Court conducts a bench trial based on the administrative record. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094-95 (9th Cir. 1999) (en banc). The standard of review of a plan administrator's denial of ERISA benefits depends upon the terms of the benefit plan.

DISCUSSION

I.   Standard of Review

Plaintiff argues that, because the LTD Plan did not explicitly reserve discretion to EBAC, the Court should review EBAC's denial of his benefits de novo. Defendants contend that the LTD Plan conferred discretionary authority on EBAC, and EBAC's determination should be reviewed for abuse of discretion.

Absent contrary language in the plan, the denial is reviewed under a de novo standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, if "the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms," an abuse of discretion standard is applied. Id.; Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993). A plan administrator has discretion "only where discretion [is] 'unambiguously retained.'" Kearney, 175 F.3d at 1090 (quoting Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir.1992)). The abuse of discretion standard has been

7

referred to as an "arbitrary and capricious" standard. McKenzie v. Gen. Tel. Co. of Cal., 41 F.3d 1310, 1314 & n.3 (9th Cir. 1994); Taft, 9 F.3d at 1471 n.2 (use of the term "arbitrary and capricious" versus "abuse of discretion" is a "distinction without a difference").

Here, the LTD Plan grants EBAC the power to "interpret the provisions of the Plan," "determine the facts affecting the eligibility of any Employee," and "determine the manner in which benefits shall be paid under the Plan, if discretionary. . . ."[3] LTD, FFIC 0165-66. Plaintiff criticizes Defendants' reliance on case law predating Kearney, arguing that this decision marked a shift away from the Ninth Circuit's more liberal approach to finding grants of discretion. Kearney, 175 F.3d at 1090. The court in Kearney insisted that a grant of discretion be

---

[3] The LTD Plan reads, in relevant part:

For the purposes of carrying out its responsibilities and duties hereunder, the Committee shall have all necessary and appropriate powers, including but not by way of limitation, the following:
(1) To interpret the provisions of the Plan and to decide any and all matters arising hereunder; including the right to remedy possible ambiguities, inconsistencies or omissions; providing, however, that all such interpretations and decisions shall be applied in a uniform manner to all participants similarly situated and shall not discriminate in favor of shareholders, officers or highly compensated Employees with respect to the class of Employees eligible to participate in the Plan. . . .
(6) To determine the facts affecting the eligibility of any Employee to be included in the Plan.
(7) To determine the manner in which benefits shall be paid under the Plan, if discretionary, and the persons who are entitled thereto and to authorize and direct all disbursements of benefits and other sums under the Plan.

LTD Plan, FFIC 0165-66.

8

"unambiguous," and held that a plan administrator's authority to pay benefits upon "satisfactory written proof" of disability was too ambiguous to merit abuse of discretion review.  Id.

Even under the standard in Kearney, however, the LTD Plan here unambiguously confers discretionary authority on EBAC.  Relying on Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations, 244 F.3d 1109, 1113-14 (9th Cir. 2001), Plaintiff argues that explicit use of the word "discretion" is required for a grant of discretion.  However, Ingram, like Kearney, did not actually require use of the word "discretion"; instead it required that the grant of discretion be "unambiguous."  Kearney, 175 F.3d at 1090; Ingram, 244 F.3d at 1114.  Ingram encouraged benefits plans to use the word "discretion," noting that it "is not difficult to write, 'The plan administrator has discretionary authority to grant or deny benefits under this plan.'"  Id. at 1113.  The fact that this LTD Plan was written before Ingram's advice was given weighs in favor of Defendants' interpretation.  Further, Ingram also noted that, of four recent cases in which the Ninth Circuit found an unambiguous grant of discretion, two explicitly used the word "discretion," while a third "unmistakabl[y]" conferred discretion without using the word "discretion."  Id.[4]

---

[4] The fourth case also held that discretion was clearly conferred without using the word "discretion," but Ingram found its holding was "difficult to apply" because it did not analyze the plan language at issue.  Id.

9

1    Plaintiff argues that here, as in <u>Ingram</u>, the plan administrator retained decision-making authority, but not discretion.  In <u>Ingram</u>, the plan administrator was vested with authority to "make all decisions on claims" and had "management and control of the operation and administration of claim procedures under the Plan."  <u>Id.</u> at 1113.  The court concluded that an "allocation of decision-making authority to [the plan administrator] is not, without more, a grant of discretionary authority in making those decisions," and found that the plan did not unambiguously confer discretion.  <u>Id.</u> at 1112-13.

    Here, however, the LTD Plan does not simply grant EBAC the authority to decide, manage or administer claims.  Instead, the LTD Plan grants EBAC the authority to "interpret provisions of the Plan" and to make substantive determinations, including "the facts affecting the eligibility of any Employee," and "the manner in which benefits shall be paid under the Plan."

    Also, in another post-<u>Kearney</u> case, the Ninth Circuit clarified that there "is no magic to the words 'discretion' or 'authority.'"  <u>Sandy v. Reliance Standard Life Ins. Co.</u>, 222 F.3d 1202, 1207 (9th Cir. 2000); <u>but see</u> <u>Bode v. St. Joseph's Health Sys. Home Health Agency Long Term Disability Plan</u>, 298 F. Supp. 2d 918, 920-21 (C.D. Cal. 2003) (holding that "full and exclusive authority to control and manage the group policy, to administer claims, and to interpret the group policy . . ." is not a grant of discretion, because it does not explicitly confer "discretion" as required by <u>Ingram</u>).  Thus, the LTD Plan is not ambiguous simply because it fails to use the word "discretion."

10

The LTD Plan's grant of power to "interpret" the Plan and "determine" eligibility and benefits payments resembles language found to require abuse of discretion review in other Ninth Circuit cases applying Kearney. See Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 n.1 (9th Cir. 1999) (finding that phrase "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy" clearly grants discretion); Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1142 (9th Cir. 2002) (holding that language granting "power" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee" is unambiguous).[5]

The LTD Plan's grant of discretion is less ambiguous than the language in other post-Kearney Ninth Circuit cases receiving de novo review. In Johnson v. Buckley, 356 F.3d 1067, 1075-1076 (9th Cir. 2004), the court found that a plan granting power to "administer the Plan" and "make such rules, regulations, interpretations, discussions, and computations as may be necessary" did not unambiguously grant discretion, because it said "nothing about the merits of [the plan administrator's] substantive claims decisions. . . ." Here, by contrast, EBAC is vested with the power not only to "administer" the LTD Plan, but also to make substantive determinations affecting benefits

---

[5] Plaintiff argues that Bergt is not controlling because the standard of review was not at issue. However, the standard of review, although not the primary focus, was at issue in Bergt, and its holding is applicable here. 293 F.3d at 1142.

11

eligibility.

For the foregoing reasons, abuse of discretion review is appropriate in this case. However, as will be discussed below, de novo review would not alter the result.

II. Defendants' Objections to Evidence and Motion to Strike

Plaintiff relies in part on letters by two physicians, written in 2004, that were not part of the administrative record available to EBAC in its review of Plaintiff's claims. Baum Decl., Ex. A, FFIC 0542-0552. Defendants move to strike these documents. Plaintiff opposes Defendants' motion.

Evidence outside the administrative record is admissible only if the court determines that de novo review is proper, and that the evidence is necessary to conduct an adequate de novo review. Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938, 944 (9th Cir. 1995). Here, de novo review is not proper, and therefore the physicians' letters are not admissible. Therefore, the Court strikes the two physicians' letters. Again, however, consideration of those letters would not alter the result.

III. Denial of Benefits

   A. Timeliness

Defendants argue that EBAC properly exercised its discretion in denying Plaintiff's claim as untimely, because Plaintiff submitted it seventeen years after he left FFIC's employment.

Under California's notice-prejudice rule, an insurer may deny a claim as untimely if the insurer can show that (1) the

12

claimant failed to submit timely proof of claim, and (2) the delay actually caused the insurer substantial prejudice. Cisneros v. UNUM Life Ins. Co. of America, 134 F.3d 939, 944 (9th Cir. 1998) ("Prejudice is not presumed from the delay alone.").

Here, Defendants argue that Plaintiff failed to submit timely notice of his claim as required by the LTD Plan. Plaintiff was given written notice in 1978 that disability claims should be submitted "not later than the 20th day after the first day for which benefits are payable," in this case, February 16, 1984. Soares Decl., Ex. C, FFIC 0104. Plaintiff disputes the twenty day deadline, pointing to an EBAC Staff Summary which stated that the LTD Plan itself did not require prompt filing of claims, and the 1978 employee notice "did not amend the Plans." Although the parties dispute the correct interpretation of the LTD Plan, EBAC had substantial support for its finding that Plaintiff knew of the twenty day deadline, and missed it by more than seventeen years. Therefore, EBAC's finding that Plaintiff failed to submit timely proof of his claim was not arbitrary or capricious. Even if EBAC's determination were reviewed de novo, Plaintiff would be found to have submitted an untimely claim. The 1978 employee notice required that claims be filed in a timely manner, and Plaintiff's seventeen year delay failed to meet this requirement.

However, even if Plaintiff failed to submit timely notice, his claim cannot be denied as untimely unless FFIC has shown

13

that his delay caused actual, substantial prejudice. EBAC concluded that Plaintiff's unexplained delay had caused prejudice, because FFIC no longer had any records relating to Plaintiff other than the dates of his employment, and because FFIC could no longer accurately determine Plaintiff's medical condition as of January, 1984. Denial, FFIC 0095. EBAC's determination is supported by the administrative record, which does not contain any FFIC documents relating to Plaintiff's employment other than a one-page email listing the dates of his employment. Therefore, EBAC did not abuse its discretion in denying Plaintiff's claim for untimeliness. Even under a <u>de novo</u> standard, Plaintiff's claim would be denied for untimeliness.

B.  Total Disability

Defendants argue that EBAC properly exercised its discretion in denying Plaintiff's claim because he was not "totally disabled" on January 27, 1984, when he left FFIC.

The LTD Plan states that employees can receive benefits only during a period of "total disability," where "totally disabled" is defined as "unable to work because of disease or injury" and "under the care of a physician." Here, the administrative record does not show that Plaintiff was totally disabled when he left FFIC. Plaintiff was placed on short-term disability leave for "chronic fatigue and depression" from October 12, 1983 to December 5, 1983. His physician cleared him to return to work on December 5 without restrictions, noting that he felt "100% better." There is no evidence to support

14

Plaintiff's counsel's assertion that he returned to work on a "trial" basis, or that his doctor ordered a second disability leave in late December, 1983 or early January, 1984. Instead, FICA wage reports indicate that Plaintiff did not receive short-term disability payments in 1984. Finally, Plaintiff's physician noted on January 27, 1984, the day Plaintiff left FFIC, that he was "generally doing well" and had a new job offer. Plaintiff was next examined five months later. Thus, EBAC's finding that Plaintiff was not totally disabled when he left FFIC was based on substantial evidence, and was not an abuse of discretion.

Plaintiff argues that EBAC abused its discretion in its finding, because it did not rely on the opinions of a medical professional. A plan administrator abuses its discretion if it rejects an employee's medical evidence without a reasonable basis. Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1122-23 (9th Cir. 1998)(plan administrator abused its discretion in relying on defendants' medical personnel, none of whom were ophthalmologists, over contrary opinion of plaintiff's treating ophthalmologist); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 538 (9th Cir. 1990) (plan administrator abused its discretion in relying on opinion of defendants' doctors, who did not adequately investigate matter or consult plaintiff's physicians or appropriate experts).

Here, however, EBAC did not rely on its own judgment, or on non-expert medical opinions, to contradict the reports of Plaintiff's treating physician. Instead, EBAC's conclusion

15

rested on the documentation provided by Plaintiff's own physician. In the two months before Plaintiff left FFIC, Dr. Mizroch noted that Plaintiff felt "100% better," was cleared to return to work without restrictions and was "generally doing well." Plaintiff points to his medical and earnings history as evidence that his depression has left him unable to work for the past two decades. However, Plaintiff's general history does not show that he was unable to work when he left FFIC on January 27, 1984. EBAC did not abuse its discretion in finding, based on the opinions of Plaintiff's treating physician, that he was not totally disabled when he left FFIC.

EBAC also denied Plaintiff's claim for benefits because he was not under the care of a physician, as required by the LTD Plan. Medical reports indicate that Plaintiff visited a doctor only once between November, 1983 and May, 1984.[6] Therefore, EBAC had substantial support for its conclusion that Plaintiff was not under the care of a physician.

Plaintiff further argues that the SSA determination in September, 1985, dating his "psychotic depression" to May, 1983, shows that he was totally disabled when he left FFIC in January, 1984. Contrary to Defendants' assertion, the administrative record does contain evidence of the basis for Plaintiff's SSA award. Plaintiff submitted not only the one-page SSA disability determination, but also a seven-page psychiatric evaluation of

---

[6] In his letter of January 2, 2002, Plaintiff's counsel stated that Plaintiff had additional medical appointments in December, 1983 and January, 1984, but this is unsupported by the record.

Plaintiff by the SSA. Medical Summary, FFIC 0076-83. However, an SSA award does not show that a plan administrator abused its discretion in denying benefits. Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1285 (9th Cir. 1990)(upholding plan administrator's denial of benefits as based on substantial evidence, despite contrary SSA award); Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004). Here, as in Madden, EBAC's denial rested on substantial evidence in the administrative record, and the subsequent, contrary SSA award does not render it arbitrary or capricious.

For the foregoing reasons, EBAC did not abuse its discretion in denying Plaintiff LTD benefits because he was not totally disabled. Even if the Court were to conduct de novo review, Plaintiff would be denied benefits, because Plaintiff has not shown that he was totally disabled in January, 1984.

The two physicians' letters submitted by Plaintiff, which would be admissible only for de novo review, also do not show that Plaintiff was totally disabled when he left FFIC. Both were written in 2004. The first, by Plaintiff's treating physician Dr. Mizroch, is a one-paragraph letter stating his opinion that "Mr. O'Neil has been unable to perform with reasonable continuity the duties of his occupation, as a consequence of his mental and physical illnesses, throughout the period from October, 1983 to the present." It is based on Dr. Mizroch's periodic treatment of Plaintiff and his review of Plaintiff's medical records. It does not address or explain Dr.

17

Mizroch's inconsistent findings in December, 1983 and January, 1984.  The second is an eight-page report by Dr. Hill, who first examined Plaintiff in 1987 for Plaintiff's SSA disability claim. It concludes that Plaintiff suffers from major depression, and has been "continuously disabled" since October 1983.  It is based on Dr. Hill's recent clinical examination of Plaintiff, and his review of Plaintiff's medical records (although he notes that he was not provided with Kaiser psychiatric records prior to 1995, except for an initial intake interview of Plaintiff in May, 1983).  Both letters confirm Plaintiff's general history of depression, which Defendants do not dispute, but they do not show that he was totally disabled, and unable to work, due to his depression in January, 1984.

    C.   Six-Month Qualifying Period

Defendants argue that EBAC properly exercised its discretion in denying Plaintiff's claim based on his failure to complete the then-applicable six-month qualifying period.

As Plaintiff concedes, under the LTD Plan, an employee became eligible for benefits only after the employee had been totally disabled for six months, and only if the six-month disability period commenced while the employee was a Plan participant.  Contrary to Defendants' assertion, however, the LTD Plan did not require that the employee receive short-term disability benefits for six months, nor did it require that the six-month period be completed before Plaintiff left FFIC's "active employment."  Nonetheless, the administrative record does not show that Plaintiff's total disability continued for a

18

six-month period that began before he left FFIC.  Instead, the record indicates that Plaintiff received short-term disability payments from October 12 until December 5, 1984, at which time he was cleared to return to work, and was no longer totally disabled as defined by the LTD Plan.  There is no evidence that he became disabled again between December 5, 1983 and January 27, 1984, when he left FFIC.  Therefore, EBAC did not abuse its discretion in denying Plaintiff's claim for his failure to fulfill the six-month qualifying period.  Even if EBAC's decision were reviewed de novo, Plaintiff's claim would be denied, because Plaintiff has not shown that he was disabled for at least six months.

    D.   Procedural Requirements of ERISA

Plaintiff argues that EBAC's denial of his claim failed to comply with ERISA procedural requirements.

ERISA requires that a plan administrator denying a benefits claim must inform the claimant of the specific reasons for denial, the plan language it relied upon, a description of information needed to perfect the appeal, and appeal procedures. 29 C.F.R. § 2560.503-1(g).

Here, EBAC met ERISA's procedural requirements.  EBAC's five- page denial letter informed Plaintiff of the specific reasons for its denial, and of appeal procedures.  In response to Plaintiff's appeal, EBAC described, and invited Plaintiff to submit, additional information needed to support his appeal.

Furthermore, Plaintiff is entitled to relief only if he can

19

show that procedural defects caused him substantive harm or involved a substantive violation of ERISA. <u>Boque</u>, 976 F.2d at 1326. Here, Plaintiff has not shown any substantive harm due to the alleged procedural violations, and is not entitled to relief.

## CONCLUSION

For the foregoing reason, the Court DENIES Plaintiff's motion for judgment under Federal Rule of Civil Procedure 52 (Docket No. 54), and GRANTS Defendants' cross-motion for judgment (Docket No. 59). The Court GRANTS Defendants' motion to strike (Docket No. 58). Judgment shall enter accordingly. Each party shall bear its own costs.

IT IS SO ORDERED.

Dated: 6/22/05          /s/ CLAUDIA WILKEN
                        CLAUDIA WILKEN
                        United States District Judge

20